Leo Fox, Esq.
630 Third Avenue
18th Floor
New York, New York 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

IN RE:

SWANKE HAYDEN CONNELL LTD.,
DESIGN 360 INC.,
SWANKE HAYDEN CONNELL
& PARTNERS LLP,


                                    Debtor.
------------------------------------------------------------x

Chapter 11 Reorganization
(Procedurally Consolidated)
Case No. 15-10009 (SCC)
Case No. 15-10010 (SCC)
Case No. 15-10011 (SCC)

TO:   THE HONORABLE SHELLEY C. CHAPMAN
      UNITED STATES BANKRUPTCY JUDGE


**APPLICATION IN SUPPORT OF DEBTORS CONTINUED USE
OF PRE-PETITION CASH  MANAGEMENT SYSTEM**


1.   On January 6, 2015, (the "Petition Date"), the Debtors Swanke Hayden Connell Ltd. (" Debtor Ltd.") (Case No. 15-10009), Design 360 Inc. ("Debtor 360") (Case No. 15-10010) and Swanke Hayden Connell & Partners LLP ("Debtor LLP") (Case No. 15-10011) filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").   The Debtors continue to operate their business and manage their properties as Debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.   An application for procedural consolidation and joint administration of the above cases has been made and is pending.

2.  This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§157 and 1334 and Sections 105, 345(b), 363, 503 and 507(b) of the Bankruptcy Code.  This matter is a core proceeding pursuant to 28 U.S.C. §157.  Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

3.  As was noted in the Local Rule Affidavits filed by the above Debtors, the Debtors are in the business of architecture and interior design.  Prior to the petitions, the Debtors operated from office in New York, Washington D.C. and Moscow Russia.  The Debtor continues to operate from all three locations.  The Debtors have seven accounts at JP Morgan Chase Bank (the "Bank") consisting of a wire transfer receipt account, payroll accounts and general operating accounts all necessary in the operations of the Debtors' businesses (Schedule A).  These accounts are well familiar to the Debtors and their accounting personnel and enable the Debtors to maintain control over the receipt and expenditure of cash and the administration of the bank accounts.

4.  The wire transfer account may receive wire transfers from customers consisting of collections of accounts receivable at any time.  These accounts and their numbers and other information are well known to customers.  Any attempts to begin changing these accounts would result in the delays and possible failures to receive the funds representing these wire transfers, particularly during this critical period upon the filing.  It would not be in the best interests of the creditors and the estate for delays and other impediments to arise in the collection of accounts receivable.

5.  Similarly, as is noted in the accompanying application, the use of the Debtors' existing payroll accounts is extremely important to the continuation of the employees services and to the continued operation of the Debtors.  Any interference and interruption in the payment

2

of the payroll would negatively impact the Debtors business and ability to general accounts receivable. The employees may become concerned upon the delays and disruptions in the receipt of their checks from new accounts with which they are unfamiliar.

6. The Debtors believe that the continuation of the existing systems will provide significant benefits to the Debtors including the assurance of available funds, management of these funds and the development of information which the Court and the creditors may request.

7. The Debtors respectfully request that the Court approve the proposed cash management order being submitted with this application. The application gives the Debtors a window of 60 days to continue to operate in its existing manner on an interim basis and to continue thereafter if no objections are filed or if are objections are filed and the Court overrules the objections. The Debtors shall stamp every check with a DIP reference and any form which the Debtors use shall include a legend reflecting the Debtors DIP status. The Bank is authorized to receive, process and honor any and all check drawn on the Debtors' bank accounts, provided that the Debtors shall stop payment on all checks written pre-petition, which have not yet been presented to the Bank (unless authorized to be paid by this Court), and the Bank is not required to honor overdrafts or other unfunded advances including for any ACH transfers.

8. The order contemplates that this Court will authorize the payment of pre-petition wages to the employees for time periods and amounts permitted as priority claims under Section 507(b) of the Bankruptcy Code, as is being requested in a separate application being filed and being heard together with this application. There are two categories of such claims, the first being employees wages for periods prior to January 2, 2015 for which checks have been issued but have not yet cleared or not yet deposited by employees (Schedule B) and the second being checks for all employees for the period January 2, 2015, which have not yet been issued.

9.   The Banks shall not be required to honor any checks, wires, ACH transfers or other requests for payment relating to the pre-petition period unless approved by order of this Court.  In addition, the Bank shall not be required to honor any such checks, wires, ACH transfers or other requests for payment unless there are sufficient funds in the Debtors' accounts. In the event that the Bank should honor any requests for payment which results in an overdraft or advance, the Bank shall have a super priority administrative claim pursuant to Sections 503 and 507(b) of the Bankruptcy Code with priority over all administration claims including any DIP loans and carve outs which may subsequently be obtained with respect to any overdraft of the accounts that the Bank honors.  The Bank's willingness to continue to render banking activities for the Debtors during this critical period and its willingness to incur the risks of payments on overdrafts (if it so chooses) more than justifies the award of super priority to the Bank.  The Debtors would not be able to obtain on any expedited or for that matter unexpedited basis any kind of loan or credit facility under any kind of terms remotely comparable to the willingness of this Bank to consider advances on overdrafts.

10. The proposed order has other provisions which are generally and normally provided for such as protection for the Bank, waiver of Section 345(b) of the Bankruptcy Code, identification of the pre-petition payments which are authorized by this Court to be made and directed the Debtors to open up DIP accounts for any new accounts that the Debtor wishes to open.

11. This Court has the authority and the power to grant the relief under Sections 105 and 363 of the Bankruptcy Code.  Protections include the Debtors' directions to stop payment on all pre-petition checks, including the DIP designation on any checks to be issued and on any other documents or business forms which the Debtors may use.

12. Notice that this application would be made was provided this morning by letter annexed hereto electronically delivered to the 10 largest unsecured creditors and the Office of the United States Trustee as well as by this application and proposed order electronically delivered this afternoon to the 10 largest unsecured creditors and the Office of the United States Trustee.

**WHEREFORE**, the Debtors' respectfully request an entry of an order granting the relief sought herein.

Dated: New York, New York
      January 8, 2015

<div style="margin-left:40%">

SWANKE HAYDEN CONNELL LTD.
DESIGN 360 INC.
SWANKE HAYDEN CONNELL & PARTNERS LLP
Debtors-in-Possession

*/s/ Leo Fox*
Leo Fox
Prospective Attorney for Debtors-in-Possession
630 Third Avenue, 18th Floor
New York, New York 10017
(212) 867-9595

</div>

C:\Leo\@Strasser\App. Re: Pre-Petition Cash Management\1-8-15

Leo Fox, Esq.
630 Third Avenue
18th Floor
New York, New York 10017
(212) 867-9595

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

IN RE:

SWANKE HAYDEN CONNELL LTD.,
DESIGN 360 INC.,
SWANKE HAYDEN CONNELL
& PARTNERS LLP,

Chapter 11 Reorganization
(Procedurally Consolidated)
Case No. 15-10009 (SCC)
Case No. 15-10010 (SCC)
Case No. 15-10011 (SCC)

Debtor.

------------------------------------------------------------x

### ORDER: (A) AUTHORIZING THE DEBTORS TO CONTINUE USING THEIR EXISTING CASH MANAGEMENT SYSTEM; (B) AUTHORIZING THE DEBTORS TO CONTINUE USING THEIR BANK ACCOUNTS AND BUSINESS FORMS; AND (C) WAIVING THE DEBTORS' COMPLIANCE WITH INVESTMENT GUIDELINES UNDER 11 U.S.C. § 345(B)

THIS MATTER having been opened to the Court upon the Application of the above

Debtors and Debtors-in-Possession (the "**Debtors**"), by and through their proposed counsel, Leo

Fox, Esq., for entry of an Order: (a) authorizing the Debtors to continue using their existing cash

management system; (b) authorizing the Debtors, as applicable, to continue using their bank

accounts and business forms; and (c) waiving compliance with investment guidelines under 11

U.S.C. § 345(b) (the "**Motion**");[1] and it appearing that good and sufficient notice of the Motion

having been provided ; and the Court having considered all the moving papers, the opposition

thereto, if any, and the arguments of counsel, if any; and the Court having determined that the

_____

[1] All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Verified Application submitted in support of the Motion (the "**Application**").

relief requested in the Motion is in the best interests of the Debtors, their estates and creditors; and other good cause having been shown,

IT IS ORDERED as follows:

1.      The Debtors are authorized, on an interim basis for the next sixty (60) days, or such additional time as may be extended for "cause," to maintain, in their sole discretion, the Cash Management System with JPMorgan Chase Bank, N.A. ("**Chase**")

2.      The Debtors hereby are authorized, on an interim basis for the next sixty (60) days, or such additional time as may be extended for "cause," to maintain, in their sole discretion, the Bank Accounts with Chase identified on Schedule A hereto instead of opening debtor-in-possession accounts.

3.      The requirements of 11 U.S.C. § 345(b) hereby are waived, on an interim basis, for the next sixty (60) days.

4.      If the Office of the United States Trustee ("**UST**") does not file a written objection within sixty (60) days from the date hereof, or such additional time as may be extended for "cause," the Debtors, as applicable, shall be authorized to maintain and utilize the Cash Management System and Bank Accounts on a permanent basis, without compliance with the investment guidelines set forth in 11 U.S.C. § 345(b).  If the UST files a written objection within the sixty (60) day period, the Court will schedule the matter for a hearing.  In such event, the Debtors, as applicable, shall be authorized to maintain the Cash Management System and Bank Accounts, and shall be excused from opening debtor-in-possession accounts, pending further Order of the Court.

5.      If the Debtors open any new bank or other accounts, they shall designate such accounts as "DIP" accounts with the case number listed therein and provide the UST with notice

of same within seven (7) days thereof. The UST shall have sixty (60) days to object thereto or such additional time as may be extended for "cause."

6. The Debtors are authorized to continue using their existing Business Forms without alteration or change, except that any Debtor that issues a check shall stamp each check with a "DIP" reference. In the event a Debtor purchases new Business Forms during the pendency of these Chapter 11 cases, such forms shall include a legend referring to that Debtor's status as a debtor-in-possession.

7. Except as otherwise expressly provided in this Order, all banks at which the Bank Accounts are maintained are authorized and directed to continue to service and administer the Bank Accounts as accounts of the applicable Debtor as a debtor-in-possession, without interruption and in the ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires, and automated clearing house transfers issued and drawn on the Bank Accounts after the Filing Date by the holders or makers thereof, as the case may be; provided, however, that Chase shall not be required to honor any overdrafts or other unfunded advances, including for any ACH transfers.

8. In the event there is an overdraft of the Bank Accounts that Chase honors, Chase shall be granted a superpriority administrative claim pursuant to Section 503 and 507(b) of the Bankruptcy Code with priority over all administrative claims, including the DIP and any Carve Out.

9. Chase shall be entitled to rely upon instructions received in writing or via email from the following responsible persons at the Debtors: Richard Seth Heyden or any other person designated in writing by Mr. Hayden.

10.    Chase shall not be liable to any party on account of (i) following the Debtors' instructions or representations as to any order of this Court, (ii) the honoring of any pre-petition check, draft or other item in a good faith belief that the Court has authorized such pre-petition check, draft or other item to be honored, or (iii) an innocent mistake made despite implementation of reasonable handling procedures.

11.    In the course of providing cash management services to the Debtors, Chase is authorized to deduct Banking Service Fees from the appropriate accounts of the Debtors, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks, or other returned items, including, without limitation, returned items that result from wire transfers or other electronic transfers of any kind, regardless of whether such items were deposited or transferred pre-petition, or post-petition and regardless of whether the returned items relate to pre-pre-petition, or post-petition items or transfers.

12.    To the extent that the pre-petition payroll checks identified on Schedule B hereto (the "**Payroll Checks**") and any other pre-petition Payroll Checks for the payroll period ending January 2, 2015 for which approval is being sought at the hearings presently scheduled for January 9, 2015 and are presented to Chase, to the extent that there are sufficient funds in the Debtor's payroll account, Chase shall honor such checks for payment.  In the event, that Chase has previously rejected such Payroll Checks for payment and such Payroll Checks are re-presented, to the extent that there are sufficient funds in the Debtor's payroll account, Chase shall honor such checks for payment.

13.    Other than as expressly authorized by order of this Court, Chase shall not be required to honor any pre-petition checks or other requests for payment of pre-petition obligations.

14.     The Debtors are directed to maintain records of all transfers within the Cash Management System so that all transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors prior to the commencement of these Chapter 11 cases. The Debtors are also directed to maintain their books and records so as to provide a clear line of demarcation between prepetition and post-petition transactions and operations.

15.     Subject to paragraph 5 herein, and the Debtor's obligation to maintain Account ***6188 with Chase as cash collateral for the obligations under a certain stand by letter of credit, the Debtors are authorized to open new Bank Accounts or close existing Bank Accounts as they deem necessary and appropriate in their sole discretion.

16.     For any banks at which the Debtors hold accounts that are party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of New York, within fifteen (15) days of entry of this Order, the Debtors shall (a) contact each such bank, (b) provide the Debtors' employer identification numbers, and (c) identify each account held at such bank as being held by a debtor-in-possession in a bankruptcy case.

17.     For any banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the Office of the United States Trustee for the District of New York, the Debtors shall use their good-faith efforts to cause each such bank to execute a Uniform Depository Agreement in a form prescribed by the Office of the United States Trustee for the District of New York within forty-five (45) days of the date of this Order. The U.S. Trustee's rights to seek further relief from this Court on notice in the event that aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the U.S. Trustee are fully reserved.

18.    The Debtors shall maintain accurate and detailed records of any and all intercompany transactions, including transfers and disbursements, so that all such transactions may be readily ascertained, traced, recorded and accounted for in the post-petition period.

19.    This Order is without prejudice to the Debtors' right to seek a further interim waiver of the requirements of Section 345(b).

20.    The Debtors are authorized to take all actions necessary to implement the relief granted in this Order.

21.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

22.    A true copy of this Order shall be served on all parties-in-interest by regular mail within seven (7) days hereof.

# SCHEDULE A

Schedule A

Bank Accounts

| Client | Account Name | Account No. Last 4 digits | Account Type |
|---|---|---|---|
| Swanke Hayden Connell Ltd | SWANKE HAYDEN CONNELL LTD CASH COLLATERAL CD ACCOUNT | ****6188 | Certificate of Deposit (Chase Cash Collateral for SBLC) |
| Swanke Hayden Connell Ltd | SWANKE HAYDEN CONNELL LTD | ****0091 | Demand Deposit |
| Swanke Hayden Connell Ltd | SWANKE HAYDEN CONNELL LTD | ****1470 | Demand Deposit |
| Swanke Hayden Connell Ltd | SWANKE HAYDEN CONNELL LTD | ****2664 | Demand Deposit |
| Swanke Hayden Connell Ltd | SWANKE HAYDEN CONNELL LTD. FSA ACCT | ****9820 | Demand Deposit |
| Design 360 | DESIGN 360 INC | ****2790 | Demand Deposit |
| Swanke Hayden Connell Ltd | SWANKE HAYDEN CONNELL & PARTNERS LLP | ****7962 | Demand Deposit |

# SCHEDULE B

Schedule B

Outstanding Pre-Petition Payroll Checks

| Employee Initials | Check No | Check Date | Amount |
|---|---|---|---|
| AOG | 12004282 | 8/8/2014 | $3,645.09 |
| AOG | 12004326 | 9/4/2014 | $3,645.10 |
| AOG | 12004370 | 9/8/2014 | $3,942.82 |
| AG | 12004678 | 12/30/2014 | $1,387.77 |
| TR | 12004693 | 12/30/2014 | $1,677.48 |
| RS | 12004697 | 12/30/14 | $1,732.28 |